IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE A. JACKSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. 20-cv-035-DWD |
| MAC-SHANE FRANK, and DAVID HESS, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Maurice Jackson, an inmate in the custody of the Illinois Department of Corrections ("IDOC") filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations against Defendants Mac-Shane Frank and David Hess (Docs. 1, 17).  After screening and the substitution of Defendants, Plaintiff proceeds on one Eighth Amendment claim for a failure to protect against Defendants Frank and Hess (Docs. 17, 43).[1]  Now before the Court is Defendants' Motion for Summary Judgment (Docs. 84, 90).[2]  Plaintiff filed a Response (Doc. 87).  For the reasons detailed below, the Motion is due to be denied.

## Background

For the purposes of this Motion, the following facts are undisputed.  Plaintiff is currently housed at Big Muddy River Correctional Center (Doc. 71).  However, at the

---

[1] Defendant Hess was substituted for John Doe #1 on May 28, 2021 (Doc. 43).
[2] Doc. 90 is a corrected Exhibit A of Plaintiff's deposition transcript and errata sheet, and was substituted for Exhibit A to Defendants' Motion for Summary Judgment at Doc. 84-1 (*See* Order at Doc. 89).

time of the events in this matter, he was housed at Pinckneyville Correctional Center ("Pinckneyville") (Doc. 1, p. 2; Doc. 17, p. 1). At all relevant times, Defendant Frank was a Lieutenant and Defendant Hess was a counselor, both at Pinckneyville (Doc. 90, p. 27).

On or about October 28, 2019, Plaintiff was in crisis and moved to 5-house, D wing, cell number 35 (Doc. 90, p. 24). Upon his arrival to the D wing, Plaintiff engaged in a conversation with an individual who goes by the name Barbara (Doc. 90, p. 25). Plaintiff represents that Barbara identifies as transgender (Doc. 90, p. 24). Following Plaintiff's conversation with Barbara, another inmate, who goes by the name Keith, confronted Plaintiff about his interaction with Barbara and accused Plaintiff of being "bogus" for speaking with Barbara (Doc. 90, p. 24).

On October 29 or 30, 2019, at dinner, Plaintiff overheard other individuals in custody talking about attacking him (Doc. 90, pp. 26, 40). On October 31, 2019, Plaintiff woke up around 3:30 A.M. and wrote two letters to Defendant Frank and the 5-house counselor for D wing, Defendant Hess (Doc. 90, p. 27). Plaintiff did not have time to go to the library to make copies of the letters before breakfast, so he also made and kept a handwritten copy of each letter (Doc. 90, pp. 36, 44). The letter addressed to Defendant Frank stated:

> Sir, I am in danger, and I'm asking you will you please move me back to 1-House, like you said you would do? You told me in your office, when I came off watch, you were getting my letters, and to keep writing you to let you know what's going on. I'm telling you now inmate "Key" threatened, with another inmate to attack me for conversating with Barber. They had a conversation and I overheard it, and the attack is against me. I fear for my safety, please help me. Please get me from out here.

(Doc. 87, p. 21; Doc. 90, p. 44).³ The letter addressed to the counselor stated:

> To Whom This May Concern, Counsler [*sic*] for 5-House, D-Wing, my life is in danger of an inmate attack. By inmate Key and another inmate. I overheard them having a conversation about attacking me. Please, will you move me out this cell house because I fear for my safety. Will you please speak to Lt. Franklin or I.A. and have me moved before I'm harmed? They plotting to attack me!

(Doc. 87, p. 22; Doc. 90, pp. 44-45).⁴

Around 4:30 A.M., Plaintiff dropped these letters off on the way to breakfast (Doc. 90, p. 38). Plaintiff placed Defendant Frank's letter in the U.S mailbox, and the counselor letter in the counselor box (Doc. 90, p. 38). Plaintiff described the U.S. mailbox as the box where "you put all your mail that's going to outgoing mail" and who does not have a designated box (Doc. 90, p. 28). Plaintiff testified that this box was appropriate for mail going to "an attorney" or for "somebody that's in an institution" because the mail all goes to the mailroom for sorting (Doc. 90, p. 28). Plaintiff alleges that there are cameras in the hallway by the boxes for the counselor, but that he was told the camera was not working (Doc. 90, p. 28). Plaintiff does not know whether Defendants received his letters (Doc. 90, p. 37), and Defendants both deny receiving the letters (Doc. 84-3, p. 2; Doc. 87, pp. 39-40).

On November 2, 2019, Plaintiff was attacked by three inmates named Walton, Hall, and Armond (Doc. 1, p. 9-10; Doc 90, pp. 29-30). The parties did not brief the extent of

---

³ Plaintiff provided copies of information from the Illinois Department of Corrections which indicated that "Key" was a known nickname for Keith, and that Barber was Barbara's last name (Doc. 87, pp. 23, 48; *see also* Doc. 90, p. 25).
⁴ Plaintiff testified that he routinely referred to Defendant Frank by the name "Lieutenant Franklin." (Doc. 87, p. 33).

Plaintiff's injuries; however, Defendants do not appear to dispute that Plaintiff suffered injuries because of the attack.

Both Defendants described Pinckneyville's mail system and procedures in their answers to interrogatories (Doc. 84-2; Doc. 84-3, p. 2; Doc. 87, pp. 26-46). Defendant Hess represented that mail is picked up by persons with "keys to the boxes" and taken to the mailroom to be sorted and delivered to appropriate persons (Doc. 84-2, p. 39). These pick-ups occur on the 11:00-7:00 shift by the sergeants Monday through Thursday (Doc. 83, p. 35). The mail room staff arrives around 7:00 or 8:00 A.M. on weekdays, and no one works in the mailroom on weekends (Doc. 83, p. 35). Office coordinators "go to the mailroom two times a day (Monday through Friday) to pick up the appropriate mail. But if the individual in custody moved to a housing unit on a Friday and/or placed the request in the box over the weekend, the mail would not be picked up until the midnight shift on Sunday." (Doc. 84-2, p. 40). Defendant Frank indicated that during the events from October 31-November 3, 2019, "he was not aware of the internal mail system being dysfunctional" (Doc. 84-3, p. 2).

If an inmate letter indicated an emergency or threat of danger, it would be sorted directly to Internal Affairs to be investigated because it was beyond the scope of a counselor (Doc. 84-2, p. 2). However, if an emergency letter was given directly to a counselor, then the letter would still be directed to Internal Affairs by the counselor (Doc. 84-2, p. 2). Defendant Hess stated that if he had received an emergency letter, he "would act upon it by notifying the appropriate staff to investigate the emergency." (Doc. 84-2,

4

p. 2). Similarly, Defendant Frank stated that if he would have received Plaintiff's emergency letter/kit, "he would have acted appropriately" (Doc. 84-3, p. 2).

## Legal Standard

Summary judgment is proper if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

The Eighth Amendment's proscription against cruel and unusual punishment includes a duty to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). But "a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). "Prisons, after all, are dangerous places often full of people who have demonstrated aggression." *Id.* Rather, a prison official is liable for failing to protect an inmate "only if the official 'knows of and

5

disregards an excessive risk to inmate health and safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

A deliberate indifference claim includes two components: (1) the harm to which the prisoner was exposed was objectively serious, meaning that it posed a substantial risk of serious harm; and (2) the defendant prison official was deliberately indifferent to that risk, meaning that she subjectively knew about the risk, and did not take reasonable measures to abate it. *Balsewicz v. Pawlyk*, 963 F.3d 650, 654–55 (7th Cir. 2020); *Farmer*, 511 U.S. at 837. Defendants do not dispute that the harm to which Plaintiff was exposed was objectively serious; rather, they focus their argument on the subjective prong. This requires that each defendant "have actual, not merely constructive, knowledge of the risk." *LaBrec v. Walker*, No. 18-1682, 2020 WL 400195 (7th Cir. Jan. 24, 2020) (citing *Gevas*, 798 F.3d at 480). In determining whether Plaintiff has presented sufficient evidence to raise an inference of actual knowledge, the court must consider the totality of the circumstances. *Id.* at 842 (The "overall context is the relevant focus, and that must include consideration of all of the factors as a whole rather than as discrete, independent components.").

In failure to protect cases, "a prisoner normally proves actual knowledge of impeding harm by showing that he complained to prison officials about a specific threat to his safety." *Gevas*, 798 F.3d at 480 (internal citation and quotation omitted). Complaints that "convey only a generalized, vague, or stale concern about one's safety" generally fail; rather, to support an inference that the prison official to whom the prisoner complained had actual knowledge of the risk, a complaint must identify the potential assailant and

6

describe "a specific, credible and imminent risk of serious harm." *Id.* at 480. Relatedly, an inmate's letters to a prison administrator may suffice to put the official on notice of a potential constitutional violation, if "the communication, in its content and manner of transmission" gave the official sufficient information to alert her to an excessive risk to inmate safety. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996).

Here, Defendants argue that Plaintiff lacks any evidence demonstrating they received Plaintiff's October 31 letters (Doc. 84). Defendants do not, however, argue that these letters were otherwise insufficient to put Defendants on notice of a credible imminent risk of harm to Plaintiff. Indeed, both Defendants indicated that they would have "acted appropriately" or directed the letter to the appropriate staff members to investigate the emergency had they received the letters (Doc. 84-2, p. 2; Doc. 84-3, p. 2). Thus, the only question before the Court is whether Defendants received the letters.

Viewing the record in the light most favorable to Plaintiff, the Court finds a material dispute of fact as to whether Defendants received the letters. Plaintiff testified that he placed the letters in the appropriate mailboxes around 4:00 A.M. on October 31, 2019, which Plaintiff claims was a Thursday (Doc. 90, p. 38). Thus, Plaintiff argues that by placing the letter in the appropriate mailboxes on October 31, 2019, Defendants had sufficient time to receive the letters prior to his attack on November 2, 2019. Indeed, there is evidence in the record to support this assumption. Specifically, Defendants detailed that the mailboxes at Pinckneyville were emptied during the 11:00-7:00 shift Monday through Thursday, and then sorted in the mailroom sometime after 8:00 A.M. when the mailroom staff arrived (Doc. 83, p. 25). Sorted mail was then picked up two times a day

7

Monday through Friday (Doc. 84-2, p. 40).  Finally, Defendant Frank stated that he had no evidence that the internal mail system was dysfunctional during this time (Doc. 84-3, p. 2).

Although Defendants deny receiving the letters, at this stage, the Seventh Circuit instructs courts to "assume that letters sent through a prison mail system were received by the addressee."  *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 767 (7th Cir. 2021) (citing *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Placing the note in the prison mail system supports an inference of receipt."); *see also Vincent v. City Colleges of Chicago*, 485 F.3d 919, 922 (7th Cir. 2007) ("Evidence of mailing is evidence of delivery. Although almost any evidence may be refuted, the trier of fact determines whether the presumption of delivery has been overcome.") (internal citations omitted); *Taylor v. Garcia*, No. 11 C 7386, 2015 WL 5895388, at *4 (N.D. Ill. Oct. 6, 2015) ("Sending letters to a prison official, even without proof of receipt, can create a triable issue of fact as to knowledge depending on their content and manner of transmission.").

As the record does not affirmatively demonstrate the non-receipt of Plaintiff's letter by Defendants, and there is no suggestion that Defendants did not regularly review inmate correspondence, the Court cannot find that Defendants did not receive Plaintiff's letters or otherwise lacked knowledge of the threat at this stage.  *See, e.g., Anderson v. Rabideau*, No. 19 C 6535, 2022 WL 4465925, at *8 (N.D. Ill. Sept. 26, 2022) (Finding a triable issue of fact as to Defendant's receipt of Plaintiff's letters when the record did not affirmatively demonstrate non-receipt, and the record did not support a finding that Defendant did not personally review inmate correspondence so to have received the

8

letter) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (no issue of fact existed as to IDOC director's knowledge of alleged unconstitutional conditions where uncontroverted affidavit showed that director did not personally review inmate correspondence related to grievances)).

This case is strikingly similar to *Horshaw*, 910 F.3d 1027 (reversing grant of summary judgment to prison guards where a jury could find that the prisoner credibly notified guard of substantial danger and took no action). In *Horshaw*, Plaintiff brought a failure to protect claim against a prison guard, alleging that he sent Defendant a letter describing an inmate threat and asking for protection prior to being brutally beaten. *Id.* Defendant conceded that the attack on Plaintiff occurred, and that Plaintiff's injuries were serious. *Id.* at 1028. Defendant even stated that had he received a copy of Plaintiff's note, he would have put Plaintiff in protective custody immediately. *Id.* at 1029. Nevertheless, Defendant sought summary judgment on the basis that he did not receive Plaintiff's letter, and thus could not know that Plaintiff was at serious risk. *Id.* The district court agreed with Defendant and granted summary judgment, however, the Seventh Circuit Court of Appeals reversed, finding a material dispute of fact concerning Defendant's receipt of the letter. *Id.* at 1029. The Appellate Court reasoned that by placing the note in the prison mail system, Plaintiff created an inference of a receipt, which a reasonable jury could resolve in either parties' favor. *Id.* To illustrate this dispute, the Appellate Court speculated:

9

> Maybe [Plaintiff] is lying or unable to remember accurately what happened, or maybe the guard who picked up the note threw it away—though the record contains evidence that this prison's internal-mail system functions consistently well. But maybe [Defendant] saw the note and forgot it, or maybe the staff is lying about what the prison's records show, or the records have been altered. A reasonable jury could resolve this conflict either way, which makes it inappropriate to grant summary judgment.

*Id.*. Here, just as in *Horshaw*, when reviewing the record in the light most favorable to Plaintiff, a material dispute of fact exists as to whether Defendants received Plaintiff's letters, and a reasonable jury could resolve this conflict either way. *See Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) (the Court does not make credibility determinations or weigh the evidence at summary judgment). Thus, summary judgment is inappropriate.

Finally, Defendants argue that they are entitled to qualified immunity. Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although qualified immunity is an affirmative defense, once a defendant invokes it, the burden shifts to the plaintiff to argue that it should not apply. *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020). On summary judgment, this court must decide (1) whether the facts that plaintiff has shown make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also id.* at 236 (holding that courts may conduct these inquiries in either order).

10

Taking the facts in the light most favorable to plaintiff, a factfinder could reasonably conclude that Defendants violated Plaintiff's Eighth Amendment rights by failing to take reasonable measures to abate his attack. At the time of Plaintiff's attack, it was clearly established that when a prison official learns that an inmate faces an excessive danger of serious harm, he must take reasonable measures to abate the danger. *Balsewicz*, 963 F.3d at 657 (citing *Farmer*, 511 U.S. at 834 and *Horshaw*, 910 F.3d at 1030). Accordingly, because there is a material dispute of fact over whether Defendants received Plaintiff's letters, the qualified immunity analysis also turns on this dispute of fact. Indeed, a reasonable jury could decide that Defendants received Plaintiff's letters but did nothing meaningful to investigate or abate them, despite obligations under the Eighth Amendment to do so. Thus, the Court cannot resolve the issue of qualified immunity at this stage; that question is for the jury. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (denying summary judgment "when the qualified immunity inquiry cannot be disentangled from disputed facts"); *in accord Alicea v. Thomas*, 815 F.3d 283, 291–92 (7th Cir. 2016) ("Because the facts are in hot dispute, the officers cannot seek pretrial refuge behind a claim of qualified immunity.") (citations omitted).

## Conclusion

For these reasons, Defendants' Motion for Summary Judgment (Doc. 84) is **DENIED**. By separate the Notice the Court will set this matter for a status hearing to discuss scheduling further resolution of this matter.

However, first, the Court will impose a short stay of proceedings so the Court may further evaluate whether a settlement conference may be beneficial, or otherwise evaluate

11

whether the recruitment of counsel on Plaintiff's behalf may be appropriate. Accordingly, the Court **STAYS** this case until **October 20, 2023.** The stay does not preclude the parties' ability to discuss a possible resolution of this case. To that end, by **October 13, 2023**, the parties are **DIRECTED** to submit their positions on the potential viability of a settlement conference.

    **SO ORDERED.**

Dated: September 28, 2023　　　　　　　　/s *David W. Dugan*
　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　DAVID W. DUGAN
　　　　　　　　　　　　　　　　　　　　United States District Judge